**IN THE UNITED STATED DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| KATHERINE WINTERS,          ) | |
|       ) | |
|       **Plaintiff,**     ) | |
|       ) | |
| v.         ) | **Case No. 10-2181-JAR-DJW** |
|       ) | |
| KANSAS DEPARTMENT OF SOCIAL AND   ) | |
| REHABILITATION SERVICES, et al.,   ) | |
|       ) | |
|       **Defendants.**    ) | |

## MEMORANDUM AND ORDER

On April 8, 2010, Katherine M. Winters filed a *pro se* civil rights Complaint against the following defendants: (1) Kansas Department of Social and Rehabilitative Services ("SRS"), (2) Don Jordan, (3) Christina Hernandez, (4) Carolyn Godinez, (5) Brenda Fatzer, (6) Christina Hicks, (7) Angela Webb, (8) State of Kansas, (9) Vicki Buening, (10) Assistant District Attorney for Johnson County ("ADA") Don Hymer, (11) Johnson County, Kansas, (12) Dennis Stanchik, (13) CASA, (14) Betsy Bautz, (15) Lois Rice, (16) KVC Behavioral Healthcare, Inc. ("KVC"), (17) B. Wayne Sims, (18) Kyle Kessler, (19) Brenda Soto, (20) Megan Edmonds, (21) Daniel Bartelli, and (22) Lisa Claudel. Magistrate Judge David Waxse granted plaintiff's motion to proceed *in forma pauperis*.

Defendants filed motions to dismiss (Docs. 7, 9, 32, 34), and on August 5, 2010, after being granted leave of court, plaintiff filed an Amended Complaint, alleging federal civil rights and state law tort claims surrounding the Child in Need of Care ("CINC") and adoption proceedings of her grandchildren, conducted in Johnson County, Kansas District Court. The Amended Complaint names the following defendants: (1) SRS, (2) Jordan, (3) Hernandez, (4) Godinez, (5) Fatzer, (6) Hicks, (7) Webb, (8) State of Kansas, (9) ADA Hymer, (10) Stanchik,

(11) CASA, (12) Bautz, (13) Rice, (14) KVC, (15) Sims, (16) Kessler, (17) Soto, (18) Edmonds, (19) Claudel, and (20) Judge Kathleen Sloan. "An amended complaint supersedes the original complaint and renders the original complaint of no legal effect."[1] Consequently, motions filed in response to the original Complaint are now moot. Furthermore, because defendants Buening, Bartelli, and Johnson County, Kansas are not named in the Amended Complaint, they have been voluntarily dismissed.

This matter is before the Court on motions to dismiss the Amended Complaint filed by the following defendants: Judge Sloan, the State of Kansas, ADA Hymer and Buening (Doc. 66); Jordan, Godinez, Fatzer, Hicks, and Webb (Doc. 70); CASA, Rice, and Bautz (Doc. 78); SRS (Doc. 80); and KVC Behavioral Healthcare, Inc., Sims, Hernandez, Kessler, Soto and Edmonds (Doc. 86). Also pending is the KVC defendants' Motion for Order of Disclosure (Doc. 94).

## I.    Amended Complaint

When construing plaintiff's *pro se* Amended Complaint, the Court bears in mind that *pro se* pleadings are to be construed liberally and held to a less stringent standard than pleadings drafted by lawyers.[2] Thus, if a *pro se* plaintiff's complaint can reasonably be read "to state a valid claim on which the plaintiff could prevail, [the court] should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."[3] However, it is not "the

---

[1]*Franklin v. Kan. Dep't of Corrs.*, 160 F. App'x 730, 734 (10th Cir. 2005) (citing *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991); *Gilles v. United States*, 906 F.2d 1386, 1389 (10th Cir. 1990)); *see Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010) (noting that, on a Rule 12(b)(6) motion, the court is only required to analyze plaintiff's amended complaint).

[2]*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[3]*Id.*

proper function of the district court to assume the role of advocate for the *pro se* litigant."[4]  For

that reason, the court should not "construct arguments or theories for the plaintiff in the absence

of any discussion of those issues,"[5] nor should it "supply additional factual allegations to round

out a plaintiff's complaint or construct a legal theory on plaintiff's behalf."[6]  The court need only

accept as true the plaintiff's "well-pleaded factual contentions, not his conclusory allegations."[7]

This lawsuit arises out of events that took place in the CINC case regarding plaintiff's

three grandchildren, J.H., C.W., and W.N., and in the adoption case regarding one of these

grandchildren, C.W.  Both cases were before Judge Sloan in the District Court of Johnson

County, Kansas.  Plaintiff's forty-two page Amended Complaint includes a laundry list of

allegations directed at all parties involved in those proceedings, including that Judge Sloan's

rulings and judgments were unconstitutional and unreasonable, that all of the defendants were

biased against her and her daughter, that the defendants were corrupt and conspired to interfere

with her relationship with her grandchildren, and that certain defendants misrepresented facts to

Judge Sloan during the proceedings and failed to investigate plaintiff's allegations or

misconduct.  The Court does not recite all of these detailed facts, but points to the relevant facts

below for the purpose of deciding the instant motions.

On December 28, 2006, Judge Sloan ordered plaintiff's grandchildren be  removed from

their mother's home as part of the CINC case.  At a January 2, 2007 hearing, Judge Sloan

---

[4]*Id.*

[5]*Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991).

[6]*Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997).

[7]*Hall*, 935 F.2d at 1110 (citation omitted).

ordered family placement for all three children. Hernandez, a KVC caseworker, visited plaintiff's home and found it to be "safe and a good placement" for C.W. and W.N., but decided to place J.H. with her paternal grandparents.

On March 3, 2008, Hernandez told plaintiff that the mother's rights to C.W. and W.N. were to be severed, and that KVC would be removing both children from plaintiff's home. Soto and Hernandez told plaintiff that KVC was severing the mother's rights because "KVC would lose their federal funding if they didn't sever the mother's rights." Plaintiff complains that the decision to terminate the mother's parental rights was based on false evidence and a conspiracy among certain parties.

At an April 4, 2008 emergency hearing on plaintiff's motion to block the children's removal from her home, Hernandez testified for two and one-half hours. Plaintiff was permitted to testify for twenty minutes. Plaintiff alleges that various statements made by Hernandez misrepresented the facts of the case and/or constituted perjury. Plaintiff also alleges Soto was "'coaching' and motioning to Hernandez" during her testimony. Plaintiff alleges Hernandez, Bautz, Hymer and plaintiff's attorney pressured her to make statements about the children's mother that plaintiff did not believe to be true, under the hope that plaintiff would be allowed to keep W.N. and C.W. in her home. She refused to do so.

Judge Sloan decided to allow KVC to remove C.W. and W.N. from plaintiff's home and approved placement with C.W. and W.N.'s aunt. Plaintiff contends Hernandez's perjury was integral to Judge Sloan's decision to remove C.W. and W.N. from her home. Hernandez later informed plaintiff that the children were being placed in a pre-adoption foster home instead. On April 11, 2008, C.W. and W.N. were removed from plaintiff's home. J.H. was reunited with her

father.  Judge Sloan and KVC placed W.N. with his father and approved placement of C.W. with a pre-adoption foster home.  Plaintiff was allowed supervised visits with all three grandchildren.[8] C.W. and W.N. lived with plaintiff from January 3, 2007 until April 11, 2008.  From "December 28, 2007," until "July 1, 2010," her grandchildren were "in Kansas state custody and . . . under the supervision and placements of KVC."[9]

Plaintiff alleges Judge Sloan demonstrated bias and prejudice when she refused to consider evidence of perjury and falsified documents at the April 4, 2008 hearing, or hold hearings to discuss motions filed by plaintiff and her attorneys regarding the evidence.  Plaintiff alleges Judge Sloan did not properly consider her for adoption of C.W. and refused to appoint a new attorney when plaintiff's court-appointed attorney withdrew for health reasons.  Plaintiff contends that she attempted to assert her "state given rights," before Judge Sloan, but that she was reprimanded for doing so.  Plaintiff filed a criminal complaint with Hymer to investigate the perjury and falsified documents presented during the April 4, 2008 CINC hearing, but Hymer did not investigate the allegations and refused to file charges.

Plaintiff purports to assert five claims in the Amended Complaint.  In Count I, she asserts a claim under 42 U.S.C. § 1983 for violation of her substantive due process rights when defendants failed to observe Kansas law; favored placement of her grandchildren with strangers before family; interfered with and destroyed her relationship with her grandchildren; and failed to allow plaintiff to participate in the consent to adoption proceedings; all of which denied her liberty interest in her relationship with her grandchildren.

---

[8] *Id.* at 24–25.

[9] *Id.* at 32, 38.

In Count II, plaintiff asserts a § 1983 claim for violation of her procedural due process rights when defendants failed to allow her an opportunity to be heard in a meaningful time and in a meaningful manner with respect to the issue of consent to adoption of C.W.

In Count III, plaintiff alleges defendants engaged in a civil conspiracy to permanently interfere with and destroy her ongoing relationship with her grandchildren who were in state custody, for the purpose of maintaining funding, which was not in the best interests of plaintiff's grandchildren. She alleges this interfered with a constitutionally protected liberty interest.

In Count IV, plaintiff alleges abuse of process under Kansas law when defendants misused the legal process for an improper purpose, that is, they effected placement detrimental to the best interests of her grandchildren and violative of plaintiff's fundamental constitutional rights, in order to maintain and maximize federal funding.

In Count V, plaintiff requests declaratory and injunctive relief on her previously-stated claims. She requests a declaration that the removal of C.W. from plaintiff's home and subsequent placement with strangers for adoption was unconstitutional and violated her substantive and procedural due process rights; that any steps taken toward C.W.'s adoption are void; and that any change in his legal custodial status based on these proceedings is void. She also requests a temporary restraining order that will stay any adoption proceedings involving C.W. until the conclusion of this litigation and that he be returned to her care pending resolution of this action.

## II.     Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction and exercise jurisdiction only when

authorized to do so.[10]  Federal jurisdiction can be challenged at any time and plaintiff bears the

burden of showing that the court has subject matter jurisdiction.[11]  A facial attack, such as this,

relies on the allegations in the complaint.[12]  "[W]henever it appears by suggestion of the parties

or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the

action."[13]  Moreover, "[i]f the court determines at any time that it lacks subject-matter

jurisdiction, the court must dismiss the action."[14]

Based on the facts in plaintiff's Amended Complaint, defendants challenge this Court's

subject matter jurisdiction over her claims.  They argue the case should be dismissed for lack of

standing, and under the domestic relations exception, the *Rooker-Feldman* doctrine, and the

*Younger* abstention doctrine.  The State defendants argue that the Court lacks jurisdiction over

the official capacity claims against them under the Eleventh Amendment.  The Court discusses

each in turn.

### A.     Standing

Defendants argue that plaintiff lacks standing to challenge the CINC or adoption

proceedings involving her grandchildren.  Article III, section 2 of the U.S. Constitution limits the

jurisdiction of federal courts to actual "cases" or "controversies."[15]  In order to satisfy the

constitutional standing requirements, plaintiff must prove: (1) injury in fact; (2) a causal

---

[10]*Burdett v. Harrah's Kan. Casino Corp.*, 260 F. Supp. 2d 1109, 1112 (D. Kan. 2003).

[11]*Id.*

[12]*Holt v. United States*, 46 F. 3d 1000, 1002-03 (10th Cir. 1995).

[13]*Penteco Corp. v. Union Gas Sys.*, 929 F.2d 1519, 1521 (10th Cir. 1991) (citations and quotations omitted).

[14]Fed. R. Civ. P. 12(h)(3).

[15]*Raines v. Byrd*, 521 U.S. 811, 818 (1997).

connection between the injury and the challenged act; and (3) a likelihood that the injury will be redressed by a favorable decision.[16] These are not mere pleading requirements, but are an indispensable part of plaintiff's case.[17]

It is clear that plaintiff lacks standing to assert any claim that the state court erred in terminating her daughter's parental rights. But defendants argue that plaintiff lacks Article III standing because she does not possess a fundamental right or liberty interest in the care, custody or control of her grandchildren. For the proposition that this argument negates Article III standing, defendants point the Court to *Roberts v. Hartz*,[18] where the Tenth Circuit found that the plaintiff-grandparent lacked standing to pursue a constitutional challenge to the New Mexico Children's Code and to a particular New Mexico Court rule. In order to resolve whether the plaintiff had standing to challenge the relevant New Mexico laws, the court was required to determine whether plaintiff had alleged sufficient facts to establish that she was a "guardian" under New Mexico law.[19] While this case may be instructive on the merits of this case—whether plaintiff has a fundamental right or liberty interest in the custody of her grandchild— the Court does not find it to be determinative on the issue of standing, as this plaintiff does not raise a constitutional challenge to any laws that were applied in the CINC or adoption proceedings in state court. Instead, plaintiff's claims all stem from injuries she alleges were caused by the proceedings themselves. She maintains that she was an interested party in the CINC proceeding

---

[16]*Friends of the Earth, Inc. v. Laidlaw Env. Servs.*, 528 U.S. 167, 180–81 (2000); *see also Tandy v. City of Wichita*, 380 F.3d 1277, 1284 (10th Cir. 2004); *Schaffer v. Clinton*, 240 F.3d 878, 882 (10th Cir. 2001) (citations omitted).

[17]*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

[18]113 F. App'x 306, 311 (10th Cir. 2004).

[19]*Id.*

8

and that the failure to allow her to intervene and be considered in the adoption proceeding give rise to her claims for relief. Accordingly, the Court is satisfied that plaintiff has standing to bring her claims.

## B. Domestic Relations Exception

"[T]he domestic relations exception . . . divests the federal courts of power to issue divorce, alimony, and child custody decrees,"[20] or make a determination that such decree is void.[21] The Supreme Court has also "acknowledged that it might be appropriate for the federal courts to decline to hear a case involving 'elements of the domestic relationship,' even when divorce, alimony, or child custody is not strictly at issue."[22] The Tenth Circuit explained:

> The proper inquiry focuses on the type of determination the federal court must make in order to resolve the claim. If the federal court is called upon to decide those issues regularly decided in state court domestic relations actions such as divorce, alimony, child custody, or the support obligations of a spouse or parent, then the domestic relations exception is applicable.[23]

Although the domestic relations exception is generally considered an exception to diversity jurisdiction, it may also be applied in federal question cases.[24]

---

[20]*Johnson v. Rodrigues (Orozco)*, 226 F.3d 1103, 1111 (10th Cir. 2000) (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992)); *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004) ("So strong is our deference to state law in this area that we have recognized a 'domestic relations exception' that 'divests the federal courts of power to issue divorce, alimony, and child custody decrees.'").

[21]*Leathers v. Leathers*, No. 08-1213-WEB, 2010 WL 1936137, at *21 (D. Kan. May 13, 2010) (citing *Wigington v. McCarthy*, 124 F.3d 219 (10th Cir. 1997)).

[22]*Elk Grove Unified Sch. Dist.*, 542 U.S. at 13 (quoting *Ankenbrandt*, 504 U.S. at 705).

[23]*Vaughan v. Smithson*, 883 F.2d 63, 65 (10th Cir. 1989).

[24]*Johnson*, 226 F.3d at 1111 & n.4; *see also Jones v. Brennan*, 465 F.3d 304, 307 (7th Cir. 2006); *Hunt v. Lamb*, 427 F.3d 725, 726–27 (10th Cir. 2005) (ordering the action be remanded to state court because it could not have been originally brought in federal court as the case revolved around a child custody dispute, even though plaintiff also alleged violations of his civil and constitutional rights); *Oltremari by McDaniel v. Kan. Soc. & Rehabilitative Serv.*, 871 F. Supp. 1331, 1361 (D. Kan. 1994) (noting that domestic relations exception should be

In order to resolve Counts I and II, the Court must find that the state court wrongfully removed plaintiff's grandchildren from her home, and wrongfully disallowed plaintiff to participate in the adoption proceedings of C.W. Indeed, in order for plaintiff to prevail on the substantive due process claim, the Court must find that Judge Sloan failed to follow Kansas law when she removed the grandchildren from plaintiff's home and when she declined to believe plaintiff's version of the facts at the April 4, 2008 hearing. Plaintiff's procedural due process claim is based on her contention that Judge Sloan wrongfully denied her motion to intervene in the adoption proceeding. These determinations, while articulated as civil rights claims, would require the Court to decide whether Judge Sloan's decisions to remove the grandchildren from plaintiff's home and place them elsewhere was contrary to state law. As such, the domestic relations exception applies to bar plaintiff's claims for violation of substantive and procedural due process.

In Count III, plaintiff asserts a claim that the defendants conspired to interfere with her protected liberty interest in an ongoing relationship with her grandchildren, for the purpose of maintaining funding. To the extent plaintiff's claim is brought as a § 1983 conspiracy claim,[25] she must plead and show, "not only a conspiracy, but also an actual deprivation of rights," because "the essence of a § 1983 claim is the deprivation of the right rather than the conspiracy."[26] "Provided that there is an underlying constitutional deprivation, the conspiracy

---

applied when plaintiff asks district court to make domestic relations decisions under the guise of civil rights claims).

[25]*Dixon v. City of Lawton, Okla.*, 898 F.2d 1443, 1449 n.6 (10th Cir. 1990); *Maxey v. Banks*, 26 F. App'x 805, 809 n.4 (10th Cir. 2001); *Fisher v. Lynch*, 531 F. Supp. 2d 1253, 1265 n.6 (D. Kan. 2008).

[26]*Id.* at 1449.

claim allows for imputed liability."[27]  This claim is premised on the Court finding defendants liable on Count I or II; therefore, it is barred by the domestic relations exception as well.

Most importantly, plaintiff requests declaratory and injunctive relief on her civil rights claims, including a restraining order.  Plaintiff asks this Court to declare the state court's removal of her grandson C.W. and his subsequent adoption "void, and that any legal change in the custodial status of [C.W.] which is based out of these proceedings is void."  She asks this Court to issue a "temporary restraining order that [sic] action in any current adoption proceedings involving her grandson [C.W.] be stayed until the conclusion of this litigation, and further that he be returned to her care pending the resolution of this action."  Because plaintiff's requested relief would require this Court to modify or declare void a child custody and adoption decision of the state court affecting plaintiff's grandchildren—domestic relations matters that traditionally look to state law for their resolution—these claims are outside this Court's jurisdiction.[28]  Plaintiff's federal civil rights claims require this Court to determine issues that are regularly and appropriately decided in state court; accordingly, this Court lacks jurisdiction.

## C.    *Rooker-Feldman Doctrine*

Defendants argue that the *Rooker-Feldman* doctrine precludes the Court from considering plaintiff's federal claims because they are inextricably intertwined with the state court judgments in the CINC and adoption proceedings.  The substantive due process claim alleges error involving both the CINC and adoption proceedings; whereas, plaintiff's procedural

---

[27]*Id.* at 1449 n.6.

[28]*See Ex parte Burrus*, 136 U.S. 586, 593–94 (1890) (holding that the possession and custody of the child, as between the father and grandfather, was a matter of domestic relations that belonged to the laws of the states); *Fisher v. Lynch*, No. 07-2154-KHV, 2007 WL 2225943, at *5 (D. Kan. July 31, 2007).

due process claim challenges only the adoption proceeding.

The *Rooker-Feldman* doctrine "prevents federal courts from assuming jurisdiction over 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'"[29]  The Supreme Court has explained that the doctrine only applies in "limited circumstances," "where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court."[30]  "Consequently, a complaint filed in a federal district court that seeks review and reversal of a state-court judgment is properly dismissed under *Rooker-Feldman*."[31]  The Tenth Circuit explained the narrow scope of the doctrine:

> "the type of judicial action barred by *Rooker-Feldman* [] consists of a review of the proceedings already conducted by the 'lower' tribunal to determine whether it reached its result in accordance with law."  In this way, we have explained that "*Rooker-Feldman* does not bar federal-court claims that would be identical even had there been no state-court judgment; that is, claims that do not rest on any allegation concerning the state-court proceedings or judgment."[32]

The doctrine deprives lower federal courts of jurisdiction to hear "claims that are either (1) actually decided by a state court, or (2) 'inextricably intertwined' with a prior state court judgment."[33]  To determine whether a claim is "inextricably intertwined," the court asks whether

[29]*Lambeth v. Miller*, 363 F. App'x 565, 567 (10th Cir. 2010) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280, 284 (2005)).

[30]*Lance v. Dennis*, 546 U.S. 459, 466 (2006); *see Erlandson v. Northglenn Mun. Court*, 528 F.3d 785, 789 (10th Cir. 2008).

[31]*Erlandson*, 528 F.3d at 789.

[32]*P.J. ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1193 (10th Cir. 2010) (internal citation omitted) (quoting *Bolden v. City of Topeka*, 441 F.3d 1129, 1143 (10th Cir. 2006)).

[33]*Dickerson v. Bates*, 104 F. App'x 699, 700 (10th Cir. 2004) (internal citations omitted).

"the state-court judgment *caused*, actually and proximately, the *injury* for which the federal-court plaintiff seeks *redress*, paying close attention to the *relief* sought in the federal suit" to determine whether it would "undo" the relief granted by the state court.[34]  The court must ask "whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment."[35]

"[W]hen the relief sought by the plaintiff[] would not reverse or 'undo' the state-court judgment, *Rooker-Feldman* does not apply."[36]  "'[G]eneral constitutional challenges to state laws,' . . . by definition 'are not attacks on state court judgments.'"[37]  Furthermore, "[i]f a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction . . . .'"[38] Unlike preclusion law, the *Rooker-Feldman* "doctrine does not bar actions by nonparties to the earlier state-court judgment," even if they were in privity with a party.[39]  And it does not bar jurisdiction if the federal suit was filed concurrently, before the end of the state court's appeal process.[40]

---

[34]*Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1237 (10th Cir. 2006) (quotations omitted; emphasis in original); *Tal v. Hogan*, 453 F.3d 1244, 1256 (10th Cir. 2006) (quoting *Kenmen Eng'g v. City of Union*, 314 F.3d 468, 473 (10th Cir 2002), *overruled on other grounds by Exxon Mobil Corp.*, 544 U.S. at 291–92).

[35]*Missouri ex rel. Nixon v. Audley (In re Audley)*, 275 B.R. 383, 389 (10th Cir. BAP 2002) (quoting *Collins v. Kansas*, 174 F. Supp. 2d 1195, 1198 (D. Kan. 2001)).

[36]*Mo's Express*, 441 F.3d at 1237 (citations omitted).

[37]*Id.*

[38]*Id.* (quoting *Exxon Mobil Corp.*, 544 U.S. at 293).

[39]*Lance v. Dennis*, 546 U.S. 459, 466 (2006); *Johnson v. Rodrigues (Orozco)*, 226 F.3d 1103, 1108–09 (10th Cir. 2000) (concluding that *Rooker-Feldman* doctrine did not apply to purported father's claims because he was not a party to the state court adoption).

[40]*Chapman v. Oklahoma*, 472 F.3d 747, 749 (10th Cir. 2006) (internal quotations omitted).

1.      **CINC**

Plaintiff alleges she was granted "interested party status" in the CINC case,[41] she was appointed an attorney, she filed motions and testified as a witness at least at one hearing. The Kansas Court of Appeals upheld the district court's decision to terminate the mother's parental rights in the CINC case.[42] Accepting plaintiff's allegations in the Amended Complaint as true, she was a party to the CINC case, which is now final.

Count I challenges Judge Sloan's decisions in the CINC case, particularly removing plaintiff's grandchildren from her home, and alleges that defendants were biased against her in recommending that plaintiff's grandchildren be placed elsewhere. Plaintiff further alleges that various defendants falsified documents involved in that proceeding, that defendant Hernandez committed perjury during the April 4, 2008 hearing and that ADA Hymer failed to investigate her allegations of error. Plaintiff seeks relief in the form of monetary damages and injunctive and declaratory relief—she seeks a declaration from the Court that her grandchildren's removal was unconstitutional and seeks to void any adoption of C.W. that stems of the CINC or adoption proceedings and that he be returned to her care. All of plaintiff's factual claims were either actually decided by Judge Sloan, or inextricably intertwined with the state court CINC judgment.

In order for the Court to award plaintiff the relief she desires—monetary damages, injunctive and declaratory relief—the Court would be required to review and reject the state court CINC judgment. Plaintiff also alleges that there was no evidence to support Judge Sloan's

---

[41](Doc. 98 at 12.)

[42]*In re C.W. and W.N.*, 219 P.3d 1243, 2009 WL 4639600 (Kan. Ct. App. Dec. 4, 2009); *see Bear v. Patton*, 451 F.3d 639, 642 (10th Cir. 2006) ("if a lower state court issues a judgment and the losing party allows the time for appeal to expire, then the state proceedings have ended" (citation omitted)).

decisions, a claim that requires this Court to review issues actually decided by the state court for sufficiency of the evidence. Even plaintiff's claim that defendant Hernandez perjured herself during the April 4, 2008 hearing would require review of the state court proceedings, as the Amended Complaint makes clear that plaintiff was given an opportunity to testify to her rendition of the relevant facts, in addition to Hernandez, and that Judge Sloan nonetheless determined that the children should be removed and placed elsewhere.[43] The Amended Complaint also shows that plaintiff asserted her rights before Judge Sloan and was reprimanded. Assuming the facts alleged in the Amended Complaint are true, plaintiff's substantive due process claim asserting error during the CINC proceeding is barred by the *Rooker-Feldman* doctrine.

Plaintiff argues her claims are not intertwined with the state court judgment because her claims do not "depend upon a finding that any juvenile court order was wrongly decided,"[44] but, instead, challenge "whether the process used in the court below unconstitutionally interfered with her fundamental Constitutional rights."[45] This argument is unavailing. "[F]ederal courts lack subject matter jurisdiction to review a state court judgment, even if the state judgment is challenged as unconstitutional."[46] Furthermore, "the type of judicial action barred by *Rooker-*

---

[43]*Ellis v. Fin. Corp.*, 6 F. App'x 765, 769 (10th Cir. 2001) (holding that plaintiff's attack on the procedures used to obtain the state-court judgment, allegedly affected by fraud and perjury, was barred by *Rooker-Feldman*); *c.f., P.J. ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1194 (10th Cir. 2010) (holding that *Rooker-Feldman* did not bar a § 1983 claim for violations of substantive and procedural due process rights premised on defendants' misrepresentations to the state court in juvenile court proceedings where plaintiff-parents neither appeared nor testified).

[44](Doc. 82 at 7.)

[45]*Id.* at 8.

[46]*Brown v. Dist. of Columbia*, 113 F.3d 1245 (Table), 1997 WL 235605, at *1 (10th Cir. May 8, 1997) (citing *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983)) ("They do not have jurisdiction, however, over challenges to state court decisions in particular cases arising out of judicial proceedings even if those

*Feldman* [] consists of a review of the proceedings already conducted by the 'lower' tribunal to determine whether it reached its result in accordance with law."[47] Plaintiff has not challenged the constitutionality of any particular statute[48] or a procedure for enforcement of a state judgment.[49] Rather, she argues the state court did not correctly apply state or constitutional law in reaching its outcome; a matter inappropriate for this Court's consideration.[50]  Plaintiff's claims that challenge the CINC case below are barred by the *Rooker-Feldman* doctrine.

### 2.    Adoption

Unlike the CINC case, the Amended Complaint does not make clear whether the adoption case has become final.  To the extent it is final, the Court evaluates whether it is barred by *Rooker-Feldman*.  In Count I, plaintiff argues the state court did not give her the preference required under K.S.A. § 38-2270(b) when it granted custody of C.W. to strangers for the purpose of adoption.[51]  In Count II, plaintiff argues she was denied "an opportunity to be heard in a meaningful time and in a meaningful manner with respect to the issue of consent to adoption of

---

challenges allege that the state court's action was unconstitutional.").

[47]*See P.J. ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1193 (10th Cir. 2010) (quoting *Bolden v. City of Topeka*, 441 F.3d 1129, 1143 (10th Cir. 2006)) (alteration in original).

[48]*See Feldman*, 460 U.S. at 486 (holding that general constitutional challenges to state laws "do not necessarily require a United States district court to review a final state-court judgment in a judicial proceeding"); *Johnson v. Rodrigues (Orozco)*, 226 F.3d 1103, 1108 (10th Cir. 2000) (holding constitutional challenge to state statute was not barred by *Rooker-Feldman*).

[49]*Erlandson v. Northglenn Mun. Court*, 528 F.3d 785, 790 (10th Cir. 2008).

[50]*See Bolden*, 441 F.3d at 1138.

[51]K.S.A. § 38-2270(b) ("In making an order under subsection (a), the court shall give preference, to the extent that the court finds it is in the best interests of the child, first to granting such custody for adoption to a relative of the child and second to granting such custody to a person with whom the child has close emotional ties.").

her grandchildren."[52]  In her Amended Complaint, plaintiff alleges she requested and was denied standing in the adoption case and that she was wrongfully denied adoption of C.W.  Plaintiff's remedy for the denial of her motion to intervene was to file an appeal.[53]  In her response memorandum, plaintiff alleges the district court refused to accept her notice of appeal.[54]  Nevertheless, to the extent plaintiff claims she sought standing in the adoption case and the state court's decision to deny her adoption of C.W. is now final, *Rooker-Feldman* prevents plaintiff from appealing that decision to the federal district court.  Plaintiff's procedural due process claim is inextricably intertwined with the state court decision denying her adoption of C.W., and this claim is also barred to the extent the adoption case is now final.

Moreover, plaintiff seeks injunctive and declaratory relief that overturns the state court adoption judgment.  In addition to monetary damages, plaintiff asks this Court to void any adoption decree with regard to C.W. under the guise of a 42 U.S.C. § 1983 claim.[55]  Such appellate review is barred by the *Rooker-Feldman* doctrine.

### D.     Younger

Construing the Amended Complaint liberally, the adoption proceeding challenged in Counts I and II may not be final.  If the adoption proceeding is not yet final, the Court would abstain from exercising jurisdiction over an ongoing state court proceeding.  "In the absence of extraordinary circumstances, the *Younger* doctrine directs federal courts to refrain from

---

[52](Doc. 57 at 36.)

[53]*See Roberts v. Hartz*, 113 F. App'x 306, 310–11 (10th Cir. 2004) (holding that *Rooker-Feldman* applied because the state court denied grandmother's motion to intervene in termination proceedings, requiring her to file an appeal).

[54](Doc. 82 at 7.)

[55]*See Anderson v. Colorado*, 793 F.2d 262, 263 (10th Cir. 1986).

interfering in ongoing state civil proceedings."[56] *Younger* abstention "is the exception, not the rule."[57]  In determining whether *Younger* abstention is appropriate, a court considers whether: "(1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies."[58]  "Once these three conditions are met, *Younger* abstention is non-discretionary and, absent extraordinary circumstances, a district court is required to abstain."[59]

The Tenth Circuit has noted that "adoption and child custody proceedings are an especially delicate subject of state policy,"[60] weighing heavily in favor of abstention.[61] Furthermore, plaintiff bears the burden of showing the state court was an inadequate forum for her federal claims.[62]  "[W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an

---

[56] *Ysais v. Children Youth & Family Dep't*, 353 F. App'x 159, 161 (10th Cir. 2009) (citing *Morrow v. Winslow*, 94 F.3d 1386, 1393 (10th Cir. 1996)).

[57] *Joseph A. ex rel. Corrine Wolfe v. Ingram*, 275 F.3d 1253, 1267 (10th Cir. 2002) (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992)).

[58] *Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1215 (10th Cir. 2003) (quoting *Amanatulla v. Colo. Bd. of Med. Exam'rs*, 187 F.3d 1160, 1163 (10th Cir. 1999) (internal quotations omitted)); *see Brown v. Day*, 555 F.3d 882, 887 (10th Cir. 2009).

[59] *Crown Point I*, 319 F.3d at 1215 (citing *Seneca-Cayuga Tribe of Okla. v. Okla. ex rel. Thompson*, 874 F.2d 709, 711 (10th Cir. 1989)).

[60] *Morrow v. Wilson*, 94 F.3d 1386, 1393 (10th Cir. 1996) (quoting *Moore v. Sims*, 442 U.S. 415, 435 (1979)) (ordering *Younger* abstention when plaintiff sought to enjoin ongoing state adoption proceedings); *see Yancey v. Bonner*, 323 F. App'x 674, 676 (10th Cir. 2009).

[61] *Fisher v. Lynch*, 531 F. Supp. 2d 1253, 1267 (D. Kan. 2008) (citing *Morrow*, 94 F.3d at 1393).

[62] *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987).

adequate remedy, in the absence of unambiguous authority to the contrary."[63]  The Supreme

Court has directed that "the federal court should not exert jurisdiction if the plaintiffs 'had an

*opportunity* to present their federal claims in the state proceedings.'"[64]  "[A]bstention is

appropriate unless state law clearly bars the interposition of the [federal statutory] and

constitutional claims."[65]  Plaintiff has not made the necessary showing that the state court is an

inadequate forum.  Kansas courts may consider constitutional challenges to child custody and

adoption proceedings on appeal.[66]

To the extent plaintiff attempted to intervene in the adoption proceeding and it remains

ongoing, the *Younger* doctrine prevents this Court from resolving claims more properly raised

before the state court.[67]  Plaintiff's request for a temporary injunction or restraining order related

to any ongoing adoption proceeding is particularly inappropriate under *Younger*.[68]  Plaintiff

argues that she does not seek declaratory or injunctive relief on Counts I and II, but monetary

damages only.[69]  But "Count V" is merely a recitation of her claim for certain types of relief;

---

[63]*Id.* at 15.

[64]*Moore*, 442 U.S. at 425 (quoting *Juidice v. Vail*, 430 U.S. 327, 337 (1977)) (emphasis in original).

[65]*J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1292 (10th Cir. 1999) (quoting *Moore*, 442 U.S. at 425–26).

[66]*See Fisher*, 531 F. Supp. 2d at 1266 (noting that Kansas Court of Appeals has often addressed constitutional challenges to child custody procedures); *In re Adoption of A.A.T.*, 196 P.3d 1180 (Kan. 2008); *see infra* n.75.

[67]*See Wideman v. Colorado*, 242 F. App'x 611, 614 (10th Cir. 2007) (finding *Younger* abstention appropriate because child custody proceedings implicate important state interests); *see Hunt v. Lamb*, 427 F.3d 725, 727 (10th Cir. 2005).

[68]*See Amanatullah v. Colo. Bd. of Med. Exam'rs*, 187 F.3d 1160, 1163 (10th Cir. 1999) ("*Younger* abstention dictates that federal courts not interfere with state court proceedings by granting equitable relief—such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings—when such relief could adequately be sought before the state court." (quoting *Rienhardt v. Kelly*, 164 F.3d 1296, 1302 (10th Cir. 1999)).

[69](Doc. 98 at 15–16.)

relief sought for the constitutional violations set forth in the Amended Complaint.

The Court notes that it may decline to abstain under *Younger* when extraordinary circumstances are present, such as "in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown."[70]  But plaintiff's allegations simply do not meet "the plaintiff's 'heavy burden' to overcome the bar of *Younger* abstention by setting forth more than mere allegations of bad faith or harassment."[71]  There are no allegations in the Amended Complaint that would establish extraordinary circumstances sufficient for the Court to decline to abstain under *Younger*.[72]

### E.    Eleventh Amendment

Defendants State of Kansas, Judge Sloan, ADA Hymer, and SRS argue that they are entitled to Eleventh Amendment immunity from suit in their official capacities.  The State of Kansas and SRS are entitled to immunity from suit pursuant to the Eleventh Amendment.[73]  The Supreme Court has repeatedly explained that federal jurisdiction over suits against unconsenting states, even by its own citizens, "was not contemplated by the Constitution."[74]  Eleventh Amendment immunity extends to state agencies as well, regardless of the legal or equitable

---

[70]*Perez v. Ledesma*, 401 U.S. 82, 85 (1971); *see Younger v. Harris*, 401 U.S. 37, 54 (1971); *Phelps v. Hamilton*, 59 F.3d 1058, 1066–68 (10th Cir. 1995).

[71]*Phelps v. Hamilton*, 122 F.3d 885, 889 (10th Cir. 1997) (quoting *Phelps*, 59 F.3d at 1066; *see also Amanatullah*, 187 F.3d at 1165.

[72]*See Ysais v. Children Youth & Family Dep't*, 353 F. App'x 159, 160 (10th Cir. 2009) (finding no extraordinary circumstances present where plaintiff alleged misleading evidence was produced, no proper investigation was performed, and defendants engaged in conspiracy to terminate his parental rights); *Fisher v. Lynch*, 531 F. Supp. 2d 1253, 1267 (D. Kan. 2008) (finding no extraordinary circumstances).

[73]*Hans v. Louisiana*, 134 U.S. 1, 10 (1890);  *Hill v. Kemp*, 478 F.3d 1236, 1255–56 (10th Cir. 2007).

[74]*Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996) (quoting *Hans*, 134 U.S. at 15).

nature of the relief being sought.[75]  Under the Eleventh Amendment, states are immune from suit

unless (1) the state consents to suit, or (2) Congress validly abrogates the states' immunity.[76]

The State has not consented to suit under 42 U.S.C. §§ 1983 or 1985, nor has Congress

abrogated the states' immunity.[77]  Moreover, a state is not a "person" for purposes of § 1983.[78]

To the extent plaintiff asserts official-capacity claims for declaratory and injunctive relief

against the State officials, such claims are also barred because they do not fall within the *Ex

Parte Young* exception to Eleventh Amendment immunity.  The *Ex Parte Young* doctrine permits

suit against state officials for prospective injunctive relief.[79]  Here, plaintiff does not seek

prospective injunctive relief.

Plaintiff argues in her response that she only seeks money damages against the State on

the abuse of process claim in Count IV.  She argues that under the Kansas Tort Claims Act

("KTCA"), the Kansas Legislature gave limited consent to suit against governmental entities for

the negligent or wrongful acts of those employees acting within the scope of their employment.[80]

However, by enacting the KTCA, the State of Kansas did not waive its Eleventh Amendment

---

[75]*Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 574–75 (10th Cir. 1996) (quotation marks omitted); *Sanders ex rel. Rayl v. Kan. Dep't of Soc. & Rehab. Servs.*, 317 F. Supp. 2d 1233, 1241 (D. Kan. 2004).

[76]*Seminole Tribe of Fla.*, 517 U.S. at 54-55; *Nelson v. Geringer*, 295 F.3d 1082, 1096 (10th Cir. 2002).

[77]*Will v. Mich. Dep't of State Police*, 491 U.S. 58, 63 (1989); *Nelson*, 295 F.3d at 1096 (citing *Quern v. Jordan*, 440 U.S. 332 (1979)); *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1196 & n.13 (10th Cir. 1998).

[78]*Will*, 491 U.S. at 64-67; *accord Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1156 (10th Cir. 2001); *McLaughlin v. Bd. of Trustees of State Coll. of Colo.*, 215 F.3d 1168, 1172 (10th Cir. 2000); *Ellis*, 163 F.3d at 1196; *see also Harris v. Champion*, 51 F.3d 901, 905-06 (10th Cir. 1995) (explaining that a state or state agency is not a "person" under § 1983 except to the extent that the plaintiff sues for prospective injunctive relief only).

[79]209 U.S. 123 (1908); *Will*, 491 U.S. at 71 n.10.

[80]K.S.A. §§ 75-6101, 75-6103(a); *Woodruff v. City of Ottawa*, 951 P.2d 953, 956-57 (1997).

immunity from suit in federal court.[81]  Moreover, as discussed below, the Court declines to

exercise supplemental jurisdiction over plaintiff's state law claims.

### III.    Motion to Dismiss for Failure to State a Claim

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a

complaint must present factual allegations, assumed to be true, that "raise a right to relief above

the speculative level" and must contain "enough facts to state a claim to relief that is plausible on

its face."[82]  Under this standard, "the complaint must give the court reason to believe that *this*

plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[83]  For the

purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint

as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual

allegation.'"[84]  The court first determines if the allegations are factual and entitled to an

assumption of truth, or legal conclusions that are not entitled to an assumption of truth.[85]

Second, the court determines whether the factual allegations "plausibly give rise to an

entitlement to relief."[86]  "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

---

[81]K.S.A. § 75-6116(g); *Fox v. Wichita State Univ.*, 489 F. Supp. 2d 1216, 1233 & n.57 (D. Kan. 2007); *Ndefru v. Kan. State Univ.*, 814 F. Supp. 54, 56 (D. Kan. 1993); *see Jones v. Wichita State Univ.*, No. 06-2131-KHV, 2007 WL 926075, at *2 (D. Kan. March 28, 2007).

[82]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[83]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in the original).

[84]*Ashcroft v. Iqbal*, —U.S.—, 129 S. Ct. 1937, 1949–50 (2009).

[85]*Id.* at 1950.

[86]*Id.*

misconduct alleged."[87]  To sustain an action under 42 U.S.C. § 1983, "a plaintiff [1] must allege the violation of a right secured by the Constitution and laws of the United States, and [2] must show that the alleged deprivation was committed by a person acting under color of state law."[88]

Assuming, *arguendo*, that the Court had subject matter jurisdiction over plaintiff's federal claims, it would dismiss the federal claims for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6) for a multitude of reasons.  First, Judge Sloan and ADA Hymer are absolutely immune from suit; Judge Sloan enjoys judicial immunity,[89] and ADA Hymer enjoys prosecutorial immunity.[90]  With regard to all defendants other than defendants Hernandez, Bautz, and Soto, plaintiff fails to "make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her."[91]  Additionally, section 1983 liability cannot be imposed vicariously via the doctrine of *respondeat superior*.[92]  Therefore, her claims against State of Kansas, the Department of SRS, CASA, and KVC must fail because, taking her factual allegations as true, they are entirely premised on the doctrine of respondeat superior.  Plaintiff's claims against defendants Jordan and Godinez, who allegedly oversee the KVC and SRS caseworkers, falls short of what is

---

[87]*Id.* at 1949.  The Court would

[88]*West v. Atkins*, 487 U.S. 42, 48 (1988).

[89]*See, e.g.*, *Christensen v. Ward*, 916 F.2d 1462, 1473 (10th Cir. 1990).

[90]*See, e.g.*, *Jackson v. N.M. Public Defender's Office*, 361 F. App'x 958, 962 (10th Cir. 2010) (quoting *Nielander v. Bd. of County Comm'rs*, 582 F.3d 1155, 1164 (10th Cir. 2009)).

[91]*Smith v. United States*, 561 F.3d 1090, 1104 (10th Cir. 2009) (emphasis in original) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1249–50 (10th Cir. 2008)).

[92]*Trujillo*, 465 F.3d at 1228.

required to demonstrate supervisory liability.[93]

Finally, while grandparents have a substantive due process right to familial association with their grandchildren,[94] it is not absolute or unqualified.[95]  Assuming plaintiff has a right to familial association as the children's grandmother, the facts alleged in the Amended Complaint are that plaintiff was allowed supervised visits on a regular basis after the grandchildren were removed from plaintiff's home.  She has not alleged a cognizable claim, therefore, that her rights of association were violated.  To the extent plaintiff is alleging that, as a grandparent with whom her grandsons lived during the CINC proceedings, she now has a liberty interest in the custody, continued placement, or adoption, no such right has been established in the Tenth Circuit.[96]

Moreover, under Kansas law, a child's adoption outside the biological family brings an end to the natural grandparents' rights to associate with their grandchildren.[97]  When a grandchild is adopted by third parties, it has "new parents and new grandparents," and any contact between the child and her natural grandparents "is left solely to the discretion of the

---

[93]*See, e.g.*, *Beedle v. Wilson*, 422 F.3d 1059, 1073–74 (10th Cir. 2005).

[94]*Overton v. Bazzetta*, 539 U.S. 126, 131 (2003) (citing *Moore v. East Cleveland*, 431 U.S. 494 (1977)); *Suasnavas*, 196 F. App'x at 654, 657 (relying on *Trujillo v. Bd. of County Comm'rs*, 768 F.2d 1186 (10th Cir. 1985)); *see Roska v. Sneddon*, 366 F. App'x 930, 936–37 & n.4 (10th Cir. 2010).

[95]*Troxel v. Granville*, 530 U.S. 57, 69–70 (2000) (holding that a fit parent can limit the visitation rights of a grandparent); *Suasnavas v. Stover*, 196 F. App'x 647, 654, 657–58 (10th Cir. 2006) (addressing grandparents' constitutional claims via § 1983, but declining to decide whether the status of a "'step' parent and grandparent limits his right of familial association in any way").

[96]*See Mullins v. Oregon*, 57 F.3d 789, 794 (9th Cir. 1995) ("A negative right to be free of governmental interference in an already existing familial relationship does not translate into an affirmative right to create an entirely new family unit out of whole cloth.").

[97]*Sowers v. Tsamolias*, 941 P.2d 949, 950 (Kan. 1997).

adoptive parents."[98]  Section 1983 should not be a vehicle for resolving visitation disputes.[99]  To the extent C.W. has now been adopted, plaintiff's rights to familial association must give way to the greater rights of his parents to his care, custody and control.[100]

## IV.    Supplemental Jurisdiction

Under 28 U.S.C. § 1367(c), the Court may decline to exercise supplemental jurisdiction if it has "dismissed all claims over which it has original jurisdiction."[101]  The Court considers "the nature and extent of pretrial proceedings, judicial economy, convenience, and [whether] fairness would be served by retaining jurisdiction."[102]  In this case, plaintiff's state law claim for abuse of process is closely intertwined with domestic relations matters surrounding the placement and subsequent adoption of her grandchildren.  All of plaintiff's claims are based on her complaints concerning the CINC and adoption proceedings in state court.  This weighs against the exercise of supplemental jurisdiction over her state law claims.[103]  The Court, therefore, declines to exercise jurisdiction over plaintiff's state law claim for abuse of process.  To the extent

---

[98]*Id.*; *In re Adoption of J.A.B.*, 997 P.2d 98, 105 (Kan. Ct. App. 2000) ("A grandparent's rights in an adoption of a grandchild are purely the province of statute.  A grandparent has no natural or common-law rights to grandchildren.").

[99]*Wise v. Bravo*, 666 F.2d 1328, 1333 (10th Cir. 1981).

[100]*See Troxel*, 530 U.S. at 72 (holding that court-awarded visitation for grandparent constituted an unconstitutional infringement on mother's right to care, custody, and control of her children).

[101]28 U.S.C. § 1367(c)(3); *see Estate of Harshman v. Jackson Hole Mountain Resort*, 379 F.3d 1161, 1164 (10th Cir. 2004) ("Seeking to vindicate values of economy, convenience, fairness, and comity underlying the judicially-created doctrine of pendent jurisdiction, Congress granted statutory authority to district courts to hear claims that form 'part of the same case or controversy' as the claims on which original federal jurisdiction is based.").

[102]*Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533, 541 (10th Cir.1995) (quoting *Thatcher Enter. v. Cache County Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990)).

[103]*Smith v. City of Enid*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.").

plaintiff's conspiracy claim set forth in Count III arises under state law, the Court further declines to exercise supplemental jurisdiction over that claim.

## V.    Amendment

"[A] *pro se* litigant bringing suit *in forma pauperis* is entitled to notice and an opportunity to amend the complaint to overcome any deficiency unless it is clear that no amendment can cure the defect."[104]  Leave need not be granted if amendment would be futile.[105] Defendants argue plaintiff has neither filed a motion requesting leave to amend her complaint nor given reason why she failed to cure pleading deficiencies when she filed her Amended Complaint.  Plaintiff filed an Amended Complaint in response to defendants' original motions to dismiss.  Moreover, the basis for dismissal is lack of subject matter jurisdiction.  Based on the foregoing discussion, any possible amendment would be futile.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' motions to dismiss (Docs. 66, 70, 78, 80, 86) are **GRANTED**.  Plaintiff's Amended Complaint is dismissed in its entirety.

**IT IS FURTHER ORDERED BY THE COURT** that Defendants' Motion for Order of Disclosure (Doc. 94); and motions to dismiss the original Complaint (Docs. 7, 9 32, 34) are **MOOT.**

**IT IS SO ORDERED.**

Dated: <u>January 19, 2011</u>

<u>S/ Julie A. Robinson</u>

---

[104]*Denton v. Hernandez*, 504 U.S. 25, 34 (1992).

[105]*See Gee v. Pacheco*, —F.3d—, 2010 WL 4196034, at *14 (10th Cir. 2010); *Mountain View Pharmacy v. Abbott Labs.*, 630 F.2d 1383, 1389 (10th Cir.1980) ("Where a complaint, as amended, would be subject to dismissal, leave to amend need not be granted.").

JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE